IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |
|---|---|
| JANICE M. CRAWFORD,       ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| ) | |
| v.                        ) | No. 2:23-cv-02456-SHM-atc |
| ) | |
| MERRICK GARLAND,          ) | |
| ) | |
| Defendant.   ) | |
| ) | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM AND
FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

Plaintiff Janice Crawford brought this suit on July 31, 2023, alleging that her employer had retaliated against her for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e(1)-(17). (ECF No. 1.) Before the Court is Defendant Merrick Garland's Motion to Dismiss for Failure to State a Claim and Failure to Exhaust Administrative Remedies ("Motion"), filed December 1, 2023. (ECF No. 12.) Plaintiff responded in opposition to the Motion on February 5, 2024, and Defendant replied to the response on February 15, 2024. (ECF Nos. 15, 16.) For the reasons below, the Motion is DENIED.

**I. Background**

Crawford alleges the following facts, which will be accepted as true for purposes of this Motion. Theile v. Michigan, 891 F.3d 240, 243 (6th Cir. 2018). Plaintiff has worked for the U.S.

Marshals Service ("Marshals Service"), a division of the Department of Justice ("DOJ") since April 2011. (ECF No. 1 at ¶ 5.) In July 2017, she was working as a Budget Analyst in the Marshals Service's Memphis office when she learned of a job opening for an Administrative Officer ("AO") in Seattle. (Id. at ¶¶ 13-15.) Plaintiff was interviewed by a three-person panel including Chief Deputy United States Marshal Jacob Green, the selecting officer for the position. (Id. at ¶ 15.) In September 2017, Plaintiff learned that she had not been chosen for the job and that the panel had hired Wilma Thompson instead. (Id. at ¶ 16.)

Plaintiff later submitted an Equal Employment Opportunity ("EEO") complaint about an unrelated non-selection for a different position, which happened in December 2018. (Id. at ¶ 17.) After the complaint had been investigated, Plaintiff received a copy of the Report of Investigation ("ROI"). (Id.) While reviewing the ROI on August 30, 2019, Plaintiff discovered an affidavit from Steve Moody, an Assistant Chief at the Marshals Service's headquarters, saying that Green had told Moody that Green knew that Plaintiff had filed several EEO grievances, and that Green "did not want to deal with that." (Id. at ¶ 18.) On September 6, 2019, Plaintiff filed an EEO complaint, alleging that her non-selection for the AO position was retaliation for her previous EEO activity. (Id. at ¶ 20.)

2

At the administrative hearing in Plaintiff's case, Moody testified, consistently with his affidavit, that Green had told Moody that Green considered Plaintiff's EEO activity when choosing not to hire her. (Id. at ¶ 21.) The Administrative Law Judge ("ALJ") nonetheless dismissed Plaintiff's allegations, finding that she had failed to show that her non-selection was motivated by retaliatory animus because Thompson, too, had prior EEO activity. (Id. at ¶ 26.)

Plaintiff has attached parts of the administrative record from the EEO, including the ALJ's decision. (ECF Nos. 1-2, 1-3.)

Defendant has filed the Motion, seeking dismissal for lack of jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). (See generally ECF No. 12.) Defendant argues, first, that all of Plaintiff's claims are barred by the statute of limitations because she failed to initiate EEO counseling within forty-five days of learning she had not been hired for the AO job. (Id. at 7-13.) Defendant also argues that, even if Plaintiff's claims were not time-barred, she would not state a claim for retaliation because Defendant hired Thompson, who also had prior EEO activity, and thus could not have denied Plaintiff the position based on retaliatory animus.[1] (Id. at 13-18.)

---

[1] The Complaint sporadically refers to racial discrimination and an alleged pattern and practice of civil rights violations.

3

## II. Jurisdiction

District courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Plaintiff brings a claim under Title VII. (ECF No. 24.) The Court has original federal question jurisdiction over this claim.

## III. Standard of Review

### A. Defendant's Motion is Governed by Rule 12(b)(6)

Defendant argues for dismissal, citing Fed. R. Civ. P. 12(b)(1), which governs dismissal for lack of jurisdiction, and 12(b)(6), which governs dismissal for failure to state a claim. (ECF No. 12 at 1, 4.) Plaintiff argues that, if Defendant wishes to rely on record evidence outside the four corners of the Complaint, the summary judgment standard, not the motion to dismiss standard, applies. (ECF No. 15 at 5, 9.)

The Motion is not governed by Rule 12(b)(1). Defendant cites 12(b)(1) and the relevant legal standard, but does not give reasons for the lack of jurisdiction. (ECF No. 12 at 1, 4.) Defendant does not distinguish arguments about jurisdiction from arguments about the merits. (Id.) In Plaintiff's response, she construes

---

(ECF No. 1 at ¶¶ 4, 7, 9, 32.) Defendant argues that any race or pattern-based claims have not been administratively exhausted or adequately pled. (ECF No. 12 at 1-2.) Plaintiff has clarified that she is not raising claims for racial discrimination or a pattern and practice of violations. (ECF No. 15 at 2.) Therefore, the Court will only address Plaintiff's retaliation claim.

Defendant's arguments that her claim is time-barred as arguments that the Court lacks jurisdiction under Rule 12(b)(1). (ECF. No. 15 at 9.)

The time limits Defendant seeks to enforce are filing requirements, not jurisdictional requirements. Dixon v. Gonzales, 481 F.3d 324, 330 (6th Cir. 2007). Because Defendant's claim that the Complaint is time-barred can be assessed based on the face of the Complaint, it may be analyzed properly under Rule 12(b)(6). See, e.g., Cataldo v. U.S. Steel Corp., 676 F.3d 542, 547 (6th Cir. 2012). The Court has original federal question jurisdiction over this case. Insofar as Defendant seeks dismissal for lack of jurisdiction, the Motion is DENIED. 28 U.S.C. § 1331.

The Motion is not governed by the summary judgment standard. Plaintiff is correct that motions to dismiss are generally decided based on the face of the Complaint alone. USA Parking Systems, LLC v. Eastern Gateway Community College, No. 22-3523, 2023 WL 8811690, at *3 (6th Cir. Dec. 20, 2023); (ECF No. 15 at 5-6). If a Court considers matters outside the pleadings, it treats the motion to dismiss as a motion for summary judgment. Id. However, "[d]ocuments attached to a pleading as exhibits count as part of the pleading itself" and "[t]he court also may consider public records, items appearing in the record of the case, and exhibits to the motion to dismiss if the complaint references them and they are central to its claims." Id.

5

Here, Defendant has attached the transcript of the administrative hearing, parts of the record of one of Plaintiff's prior EEO complaints, the EEO complaint for the instant case, the EEO decision on the instant case, and four complaints that Plaintiff has filed in federal court. (ECF No. 12-1 to 12-11.) Plaintiff's other federal complaints are part of the public record. The remaining exhibits are referenced in her Complaint and refer to the EEO proceedings addressing the alleged retaliation at the center of this case. The Court can consider the exhibits attached to the Complaint and those attached to the Motion without converting the Motion into one for summary judgment. USA Parking Systems, 2023 WL 8811690 at *3.

### B. The Rule 12(b)(6) Standard

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss permits "a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993). A motion to dismiss tests only whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases that would waste judicial resources and result in unnecessary discovery. See Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

6

"To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face." Cooper Butt ex rel. Q.T.R. v. Barr, 954 F.3d 901, 904 (6th Cir. 2020) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "[The] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 544. The court considers the plaintiff's complaint in the light most favorable to the plaintiff. Ryan v. Blackwell, 979 F.3d 519, 525 (6th Cir. 2020) (citing Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512 (6th Cir. 2001)). The court accepts as true all factual allegations but does not accept legal conclusions or unwarranted facts. Theile, 891 F.3d at 243.

**IV. Analysis**

**A. The Limitations Period Began to Run in September 2017**

To bring a Title VII action against a federal agency, an aggrieved employee must first exhaust her administrative remedies. Dixon, 481 F.3d at 330. To exhaust her claims properly, the employee must initiate contact with an EEO counselor to begin

7

informal discussions within forty-five days of the alleged wrongdoing. Id. Failure to timely exhaust is grounds for dismissing the federal suit. Id.

Plaintiff has failed to timely exhaust her administrative remedies because she did not attempt to contact an EEO counselor to begin informal discussions within forty-five days of being denied the AO position. Id.; (ECF No. 1 at ¶¶ 15-20.) Plaintiff learned that she had not been selected in September 2017, but did not reach out to an EEO employee until September 6, 2019. (ECF No. 1 at ¶¶ 15-20.) That was well after the forty-five-day deadline had passed. Dixon, 481 F.3d at 330.

Plaintiff's argument that the limitations period began to run in August 2019 rather than September 2017 is not well-taken. (ECF No. 15 at 8-9.) Plaintiff represents that she filed an EEO complaint about an unrelated non-selection, which occurred in December 2018, and reviewed the Report of Investigation ("ROI") from that case on August 30, 2019. (ECF No. 1 at ¶¶ 17-18.) The ROI included an affidavit from Moody stating that Green, the hiring official for the AO job, had told Moody that Green knew Plaintiff had filed some EEO cases and grievances, and that Green "did not want to deal with that." (Id. at ¶ 18.) Plaintiff asserts that she had no reason to believe her non-selection for the AO job was retaliation for prior EEO complaints until reading Moody's affidavit. (ECF No. 1 at ¶¶ 15-20; No. 15 at 8-9.)

8

The Sixth Circuit held in Amini v. Oberlin College, 259 F.3d 493, 499 (6th Cir. 2001) that the limitations period begins "when the plaintiff learns of the employment decision itself, not when the plaintiff learns that the employment decision may have been discriminatorily motivated." Although Amini addressed the 300-day deadline to file a formal discrimination charge with the EEOC, not the forty-five-day deadline to make informal contact, its reasoning is applicable here. Id. at 498.

The forty-five-day limitations period began to run in September 2017, when Plaintiff learned that she had not been selected for the AO position. The Court need not decide whether the so-called "discovery rule" operates in Plaintiff's case. Although Defendant argues emphatically and at length that the discovery rule does not apply in Title VII cases, that is not the dispositive legal issue here. (ECF No. 12 at 8-12.)

In a Title VII suit, there are three logical options for the date that triggers the statute of limitations: (1) the date of the injury; (2) the date the plaintiff discovers the injury; and (3) the date the plaintiff discovers that the injury might have had a discriminatory or retaliatory motive. The discovery rule dictates that the statute of limitations begins to run the day that the plaintiff discovers her injury -- here, the date that Plaintiff learned she had been passed over for the AO position. Dibrell v.

9

City of Knoxville, 984 F.3d 1156, 1162 (6th Cir. 2021) (defining the discovery rule).

Plaintiff does not seek application of the discovery rule. If the Court applied the discovery rule, Plaintiff's claim would still be untimely, because Plaintiff learned that she had not been selected for the AO job in September 2017 -- well before she initiated contact with an EEO officer. (ECF No. 1 at ¶¶ 16, 20); Dixon, 481 F.3d at 330. Plaintiff argues that the limitations period should have been triggered by the third date -- the date she became aware that her employer's decision might have been retaliatory. (ECF No. 15 at 8-9.) Because Plaintiff does not seek application of the discovery rule, the Court need not resolve whether and when the rule can apply in the Title VII context. Based on the Sixth Circuit's holding in Amini, the limitations period for Plaintiff to contact an EEO officer began in September 2017. 253 F.3d at 499.

### B. The Statute of Limitations is Equitably Tolled Until August 2019

The forty-five-day limitations period is a filing requirement, not a jurisdictional requirement. Dixon, 481 F.3d at 330. It is subject to equitable tolling. Id. Defendant argues that the Court should not consider equitably tolling the limitations period because Plaintiff has failed to develop her arguments in favor of tolling. (ECF No. 16 at 5.) Even assuming that Plaintiff's arguments were too cursory for review, however,

10

the Court could consider equitable tolling sua sponte. Griffin v. Reznick, 609 F.Supp.2d 695, 707 (W.D. Mich. 2008); Collins v. Waste Mgmt., No. 2:12-cv-03085-JPM-dkv, 2013 WL 4774774, at *3 (W.D. Tenn. Sept. 4, 2013).

Equitable tolling -- rather than changing the day the statute of limitations is triggered -- may be an appropriate remedy if a plaintiff did not learn the facts supporting her discrimination charge until after the forty-five-day deadline had run. Amini, 259 F.3d at 499. Requests for tolling are rarely granted. Id. at 331; Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 561 (6th Cir. 2000). "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." Graham-Humphreys, 209 F.3d at 560-61. Whether to toll a statute of limitations is decided on a case-by-case basis, based on a non-exhaustive list of factors: (1) whether the plaintiff had actual notice of the filing requirement; (2) whether the plaintiff had constructive notice of the filing requirement; (3) whether the plaintiff diligently pursued her rights; (4) whether the defendant would be prejudiced by tolling; and (5) whether the plaintiff was reasonable in failing to understand the legal requirement at issue. Dixon, 481 F.3d at 331.

Courts have granted equitable tolling requests in cases where plaintiffs were not on notice that they had a potential employment claim until after the forty-five-day deadline had passed. Id. In Dixon, for example, the plaintiff, a former FBI agent, asserted that the Bureau had failed to rehire him for his prior position because of racial bias. 481 F.3d at 332. Although he did not bring his claim until three years after learning that he would not be reinstated, the Sixth Circuit held that he was entitled to equitable tolling. Id. at 330. The court explained that, when the plaintiff initially learned that he would not be reinstated to his former position, he was given only a vague reason why. Id. at 332. It was only three years later, when the FBI responded to his request for records under the Freedom of Information Act, that the plaintiff had enough information about the FBI's reasoning to conclude that he might have been a victim of discrimination. Id. at 331-32; see also Seay v. Tenn. Valley Auth., 339 F.3d 454, 469 (6th Cir. 2003) (granting the plaintiff's request for equitable tolling because plaintiff lacked the "critical information [he] needed to raise his suspicions about [his employer's] possible discriminatory motive" until after the forty-five-day deadline had passed); cf. Black v. Columbus Public Schools, 211 F.Supp.2d 975, 983 (S.D. Ohio 2002) (denying equitable tolling, in part, because it was "not a case in which the plaintiff's pursuit of his or her

12

rights was delayed while the plaintiff ascertained the information needed to support a discrimination claim").

Here, Plaintiff lacked the "critical information" necessary to conclude that her non-selection for the AO position might have been retaliatory until August 2019, when she read the Moody affidavit. Seay, 339 F.3d at 469. "The law does not demand that [plaintiffs] exercise clairvoyance," and at the time Plaintiff learned she did not receive the AO position, any allegation that it was due to her prior EEO activity would have been purely speculative. Dixon, 481 F.3d at 332.

In deciding whether Plaintiff has diligently pursued her rights, there are two relevant questions: whether Plaintiff diligently sought the information necessary to determine whether she should consider EEO action, and whether Plaintiff diligently initiated contact with an EEO employee after being put on notice that she had a potential claim. Amini, 259 F.3d at 499. Plaintiff initiated contact with an EEO counselor on September 6, 2019, about one week after reading Moody's affidavit. (ECF No. 1 at ¶ 20); Dixon, 481 F.3d at 331. She pursued her rights promptly and diligently after she was put on notice that her non-selection might have been retaliatory.

There is no information in the Complaint about whether Plaintiff diligently followed up after her non-selection for the AO position to determine whether her employer was unlawfully

13

motivated. Prior courts have found that, once a plaintiff is subject to an adverse employment action, she "is on notice and [has] an obligation to investigate further in order to safeguard his rights." Seiden v. Potter, No. 03-CV-731-26-DT, 2004 WL 3741932, at *5 (E.D. Mich. Mar. 30, 2004). Plaintiff's case is distinguishable from those where courts have denied equitable tolling because the plaintiff did not follow up on her employer's actions.

Courts have opined that a plaintiff's failure to uncover publicly available information necessary to pursue her claim suggests that she was not "reasonably diligent" in pursuing her rights. Seiden, 2004 WL 3741932 at *4-5. For example, the Sixth Circuit has affirmed the denial of equitable tolling where the plaintiff failed to discover that someone from outside of her protected class was selected for a job for which she applied -- information available to the public. See, e.g., Amini, 259 F.3d at 501 (noting that "[n]owhere in [plaintiff's] complaint does he claim that he ever contacted anyone at Oberlin or its Department of Mathematics to learn whom the College had hired to fill its faculty vacancy").

Moody's affidavit, providing evidence that Green "did not want to deal" with Plaintiff's EEO activity, was not available when Plaintiff first learned that she had been passed over for the AO position. (ECF No. 1 at ¶¶ 17-18.) The earliest that the

14

affidavit could have been drafted was December 2018. (Id.) Absent such evidence, it is difficult to determine how Plaintiff could have surmised that her non-selection was retaliatory. Although she could have asked Green why she was not chosen to be an AO, it is unlikely that he would have revealed an unlawful motive, if he had one. The failure to identify a similarly situated comparator, whose identity is publicly available, is not comparable to the failure to learn that a hiring official admitted, in private, to failing to hire the plaintiff for unlawful reasons.

Plaintiff exercised all the diligence required in pursuing her rights. Defendant has not argued that any prejudice would result from equitably tolling the limitations period.[2] Plaintiff's case is similar to those where courts have equitably tolled deadlines because a plaintiff lacked critical information putting her on notice that her employer might have acted unlawfully. Dixon, 481 F.3d at 330-32; Seay, 339 F.3d at 469. The deadline for Plaintiff to informally consult an EEO counselor was equitably tolled until August 30, 2019. Plaintiff initiated contact with an EEO counselor on September 6, well within the forty-five-day limitations period. (ECF No. 1 at ¶ 20); Dixon, 481 F.3d at 330.

---

[2] "Prejudice for the purposes of the doctrine of equitable tolling means the disposal of evidence and the inaccessibility of witnesses, the dimming recollections and other disadvantages incident to the lapse of time," and not the mere fact that, if Defendant's motion is denied, Plaintiff's action will continue. Salins v. City of Dayton, 624 F.Supp. 632, 634 (S.D. Ohio 1985).

**C. Plaintiff Has Stated a Claim for Retaliation**

A plaintiff can prevail on a retaliation claim with direct evidence or by making a prima facie case under the McDonnell Douglas framework. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002); Taylor v. Geithner, 703 F.3d 328, 336 (6th Cir. 2013); see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973) (establishing a three-part burden-shifting framework to analyze employment discrimination and retaliation claims). To make a prima facie case of retaliation, a plaintiff must show that: "(1) she engaged in a protected activity; (2) her exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." Hubbell v. FedEx SmartPost, Inc., 933 F.3d 558, 569 (6th Cir. 2019) (internal quotation marks omitted).

Defendant first argues that Plaintiff has not produced direct evidence of discrimination. (ECF No. 12 at 13-18.) Defendant then argues that Plaintiff cannot establish a prima facie case because there was no causal connection between her protected activity and her non-selection for the AO position, emphasizing that Thomas also engaged in protected activity, but was ultimately hired. (Id.)

16

Defendant's argument that Moody's statements are not direct evidence of retaliation is not well-taken. (Id.) Defendant cites an interrogatory response in which Moody wrote that Green was aware of Plaintiff's history of filing EEO cases. (Id. at 15.) Defendant argues that Moody's response is not direct evidence of retaliation because it shows only that Green knew that Plaintiff had engaged in protected activity, not that he declined to hire her because of it. (Id. at 16.)

However, Plaintiff also relies upon Moody's testimony at her administrative hearing, at which Moody said that Green knew about and "did not want to deal with" Plaintiff's history of grievances. (ECF No. 1 at ¶ 18.) That testimony is causal evidence, as well as direct evidence, of discrimination.

Defendant argues that "the Court should focus its direct-evidence analysis on Green's own statements about what he told Moody, not Moody's statements about what Green said." (ECF No. 12 at 16.) The Court cannot weigh evidence or make credibility determinations in resolving a motion to dismiss for failure to state a claim. Scott v. Becher, 736 Fed. App'x 130, 132 (6th Cir. June 5, 2018); Thomas v. Noder-Love, 621 Fed. App'x 825, 828 (6th Cir. 2015); Perry v. United Parcel Service, 90 Fed. App'x 860, 861 (6th Cir. 2004). The Court must accept Plaintiff's allegations as true and view all facts in the light most favorable to her. Ryan, 979 F.3d at 525; Theile, 891 F.3d at 243. Plaintiff has attached

17

records from her administrative proceedings, including the ALJ opinion directly quoting the hearing, which the Court may consider without converting the motion to dismiss into a motion for summary judgment.  Scott, 736 Fed. App'x at 132.  The Court cannot, however, review the hearing testimony, identify discrepancies between witnesses' testimony, and determine which witness is more credible.  Thomas, 621 Fed. App'x at 828.

Defendant argues that Plaintiff cannot make a prima facie case of retaliation because Thompson had also filed prior EEO complaints and, thus, was in the same protected class as Plaintiff. (ECF No. 12 at 18.)  Because Plaintiff has provided direct evidence of discrimination, however, she does not need to make a prima facie case under the McDonnell Douglas standard.  See, e.g., Swierkiewicz, 534 U.S. at 510 (explaining that, "if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case" under the McDonnell Douglas framework); Taylor, 703 F.3d at 336 (opining that "a plaintiff may prove unlawful retaliation by presenting direct evidence of such retaliation or by establishing a prima facie case under the McDonnell Douglas framework") (internal quotation marks, citations omitted).

Defendant contends that Plaintiff's "affirmative assertion that Thompson and Plaintiff were in the same protected class and that Green knew they had engaged in the same protected activity"

18

defeats Plaintiff's claim. (ECF 12 at 18.) Plaintiff makes no such assertion. Nowhere does Plaintiff concede that Thompson engaged in protected activity, or that, if she did, Green knew about it. Plaintiff has pled only that the <u>ALJ found</u> that she and Thompson were in the same protected class. (ECF No. 1 at ¶ 26.) Plaintiff does not concede the ALJ's findings and, in fact, filed the instant suit because she found the ALJ's ruling to be "inexplicabl[e]." (Id. at ¶¶ 26-29.) Plaintiff has not made any admissions that preclude her from stating a claim for retaliation and has provided sufficient direct evidence of retaliation to defeat Defendant's Motion.

## V.  Conclusion

Defendant's Motion to Dismiss for Failure to State a Claim and Failure to Exhaust Administrative Remedies is DENIED.

So ordered this 29th day of May, 2024.

*/s/ Samuel H. Mays*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE
