IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JANICE M. CRAWFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | )    No. 2:23-cv-02456-SHM-atc |
| | ) |
| PAMELA BONDI, ATTORNEY | ) |
| GENERAL, U.S. DEPARTMENT OF | ) |
| JUSTICE | ) |
| | ) |
| Defendant. | |

ORDER

Before the Court is Defendant's "Motion to Strike or
Disregard Paragraphs 2-3 and 12-15 of Steve Moody's Sham
Declaration." (ECF No. 94.) For the reasons below, the Court
**GRANTS IN PART** and **DENIES IN PART** Defendant's Motion.


I.   **Background**

Plaintiff's Complaint alleges employment discrimination
under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §
2000e, as amended by §1981a ("Title VII"). (ECF No. 1.) Plaintiff
alleges that the U.S. Department of Justice discriminated against
her by retaliating against her for engaging in a protected
activity as defined by Title VII. (Id.) Specifically, Plaintiff

alleges that the Department of Justice refused to hire her for an Administrative Officer ("AO") position in Seattle because of her prior EEO activity. (Id.) On August 20, 2025, Defendant moved for summary judgment. (ECF No. 75.) On October 7, 2025, Plaintiff filed her Response, including an additional declaration by a witness, Steven Moody (the "Moody Declaration"). (ECF Nos. 83 and 83-1.) On December 4, 2025, Defendant filed the "Motion to Strike or Disregard Paragraphs 2-3 and 12-15 of Steve Moody's Sham Declaration." (ECF No. 94.) Plaintiff responded to the Motion on December 22, 2025. (ECF No. 98.)

## II.  Law

Defendant titles its Motion "Motion to Strike or Disregard…" portions of the Moody Declaration. (ECF No 94.) Defendant cites relevant caselaw, but does not cite the rules of civil procedure under which it brings its Motion. (Id.)

The Federal Rules of Civil Procedure provide no grounds to strike documents that are not pleadings. See Fed. R. Civ. P. 12(f) ("The court may strike from a pleading…"); see also Fox v. Michigan State Police Dep't, 173 F. App'x 372, 375 (6th Cir. 2006) ("Under Fed. R. Civ. P. 12(f), a court may strike only material that is contained in the pleadings"); and Benoist v. Titan Med. Mfg., LLC, No. 219CV02704SHMTMP, 2021 WL 1723235, at

*1 (W.D. Tenn. Apr. 30, 2021) ("The Federal Rules of Civil Procedure do not provide for a motion to strike documents or portions of documents other than pleadings").

The Rules of Civil Procedure define "pleading" as a complaint, an answer to a complaint, an answer to a counterclaim designated as a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and, if the court orders one, a reply to an answer. Fed. R. Civ. P. 7(a).

Declarations attached as exhibits to summary judgment responses are not pleadings. Therefore, the Court cannot "strike" the paragraphs Defendant contests.

The Motion also asks the Court to "disregard" select paragraphs of Moody's Declaration. (ECF No. 94.) In the body of the Motion, Defendant appears to limit its request to the Court's consideration of Defendant's summary judgment motion. "Because ¶¶ 2-3 and 12-15 of Moody's declaration directly contradict his deposition testimony, the Court should strike or disregard these paragraphs when it considers the [Defendant's] motion for summary judgment." (ECF No. 94 at 7.)

Federal Rule of Civil Procedure 56 governs summary judgment. Fed. R. Civ. P. 56. Rule 56(c)(2) allows parties to "object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.

R. Civ. P. 56(c)(2).  The 2010 amendment notes provide that Rule
56(c)(2) objections "[f]unction much as an objection at trial,
adjusted for the pretrial setting…There is no need to make a
separate motion to strike."  Fed. R. Civ. P. 56.  Nonetheless,
courts considering similar motions have held that, "[i]f a party
does file a separate motion to strike, the motion should be
construed as an objection under Rule 56(c)(2)." P.F. v. Gordon,
No. 3:15CV01923, 2018 WL 2149280, at *3 (N.D. Ohio May 10, 2018),
citing Stillwagon v. City of Delaware, 274 F. Supp. 3d 714, 737
(S.D. Ohio 2017).  In P.F. v. Gordon, the Court decided a similar
motion that asked the court to "strike" allegedly contradictory
or "sham" declarations that the plaintiff included in the
response to a defendant's motion for summary judgment.  2018 WL
2149280.  There, the Court construed the "motion to strike" as
an objection under Rule 56(c)(2) and decided which paragraphs of
the declarations could be considered when the court decided the
summary judgment motion. Id.

The Court construes Defendant's "Motion to Strike or
Disregard" as an objection under Rule 56(c)(2) and will determine
whether to consider the disputed paragraphs of the Moody
Declaration when it decides Defendant's motion for summary
judgment.

Although Defendant's motion for summary judgment was filed
first, "[g]enerally, a district court should dispose of motions

4

that affect the record on summary judgment before ruling on the
parties' summary judgment motions." Brainard v. Am. Skandia
Life Assur. Corp., 432 F.3d 655, 667 (6th Cir. 2005). The Court
will decide Defendant's "Motion to Strike or Disregard…" before
ruling on Defendant's motion for summary judgment.

## III. Analysis - Sham Affidavit

Rule 56(c)(1)(A) allows parties seeking or opposing summary
judgment to cite materials in the record, including "affidavits
or declarations." Fed. R. Civ. P. 56(c)(1)(A). The Moody
Declaration, which Plaintiff attaches to her response to
Defendant's motion for summary judgment, would ordinarily be
allowable under this rule.

Defendant argues, however, that the Moody Declaration
violates the "sham affidavit" rule. (ECF No. 94 at 2.) That rule
"embodies the common-sense conclusion that a party may not create
a factual issue by filing an affidavit, after a motion for
summary judgment has been made, which contradicts his earlier
deposition testimony." Cox v. Ruckel, No. 23-5698, 2025 WL
2603787, at *8 (6th Cir. Sept. 9, 2025) (cleaned up). The Sixth
Circuit has said that the rule applies in two situations. It
can apply when a witness's affidavit "directly contradicts the
witness's prior testimony," and it can apply when the witness's
affidavit is "in tension with that prior testimony" so as to

5

create a "sham issue." <u>Boykin v. Fam. Dollar Stores of Michigan,
LLC</u>, 3 F.4th 832, 842 (6th Cir. 2021) (citing <u>Aerel, S.R.L. v.
PCC Airfoils, L.L.C.</u>, 448 F.3d 899 (6th Cir. 2006)).  Courts in
the Sixth Circuit "generally apply the sham affidavit doctrine
against a party who attempts to avoid summary judgment by filing
*his own* affidavit that directly contradicts *his own* prior sworn
testimony.  <u>France v. Lucas</u>, 836 F.3d 612, 622-23 (6th Cir.
2016).  However, the doctrine has been expanded to include
witnesses and other parties to the case.  <u>See</u> <u>Id</u>. (holding that
the doctrine applied to another defendant's affidavit); <u>and</u> <u>Pogue
v. Nw. Mut. Life Ins. Co.</u>, No. 18-5291, 2019 WL 1376032, at *4
(6th Cir. Feb. 7, 2019) (applying the doctrine to a witness).
The purpose of the doctrine is straightforward: "If a party who
has been examined at length under oath could raise an issue of
fact simply by submitting an affidavit contradicting his own
prior testimony, this would greatly diminish the utility of
summary judgment as a procedure for screening out sham issues of
fact." <u>France</u>, 836 F.3d at 622 (cleaned up).

Defendant argues that paragraphs 2, 3, and 12-15 are
directly contradictory and should not be considered for purposes
of summary judgment under the sham affidavit rule. (ECF No. 94
at 2-7.) Defendant argues, in the alternative, that if paragraphs
12-15 are not contradictory, they are in tension with Moody's

prior deposition testimony and should be similarly excluded from consideration for purposes of summary judgment. (Id. at 7-11.) Plaintiff responds that the new affidavit does not contradict prior testimony, but "merely clarifies his testimony." (ECF No. 98 at 2-3.) Plaintiff offers no explanation for potential changes in Moody's statements. (Id.)

In resolving the Motion, "the Court must use a scalpel, not a butcher knife, striking only those portions of affidavits that do not satisfy the requirements" of Rule 56(c). Jacqueline Prado v. Mazeika, No. 3:16-CV-320, 2019 WL 1301729, at *4 (S.D. Ohio Mar. 21, 2019) (citing Upshaw v. Ford Motor Co., 576 F.3d 576, 593 (6th Cir. 2009)).

The Court must analyze each contested portion of the Moody Declaration, deciding first whether the statements are contradictory and, if any are not contradictory, whether they should be excluded for purposes of summary judgment under the "sham affidavit" rule.

**A. Contradiction Analysis**

District courts "deciding the admissibility of a post-deposition affidavit at the summary judgment stage must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony." Aerel, 448 F.3d at 908. A directly contradictory affidavit "should be stricken

7

unless the party opposing summary judgment provides a persuasive justification for the contradiction." Id., see also France, 836 F.3d at 622.  The affidavit in question must "directly contradict[]" prior witness testimony.  Boykin, 3 F.4th at 842. Sixth Circuit "precedent[] suggest[s] a relatively narrow definition of contradiction."  Reich v. City of Elizabethtown, Kentucky, 945 F.3d 968, 976 (6th Cir. 2019) (internal quotations omitted).  "Statements are not directly contradictory if they can be simultaneously true."  Francis v. ProMedica Health Sys., Inc., 601 F. Supp. 3d 258, 262 (N.D. Ohio 2022).

This standard "is a far cry…from preventing a party who was not directly questioned about an issue from supplementing incomplete deposition testimony with a sworn affidavit." Aerel, 448 F.3d at 907.

### 1. Paragraph 2

Defendant argues that paragraph 2 of the Moody Declaration is contradictory and should be ignored because Moody says that he worked "in the United States District Court" in Shelby County, Tennessee. (ECF No. 94 at 3.) Defendant compares paragraph 2 to Moody's prior testimony in which he states that he worked in Memphis, but never in the United States District Court specifically. (Id.) Defendant also cites testimony in which, when Moody was asked if he had left anything out of his work

8

history as he described it in a different deposition, he replied
"not that I can think of right now." (Id.) Defendant cites no
testimony in which Moody expressly denied working in the U.S.
District Court. (Id.)

Moody's testimony is not contradictory because Moody never
expressly denied working in the U.S. District Court in Shelby
County. Moody describes where he worked more specifically than
in his prior testimony. He does not contradict it. Both
statements can be simultaneously true. Paragraph 2
"supplement[s] incomplete deposition testimony with a sworn
affidavit" and is therefore allowable. Aerel, 448 F.3d at 907.
Defendant also admits that, even if it were contradictory,
paragraph 2 would "not create any dispute of material fact that
would preclude summary judgment." (ECF No. 94 at 8.) Paragraph
2 of the Moody Declaration does not directly contradict Moody's
prior testimony.

### 2. Paragraph 3

Defendant argues that paragraph 3 of Moody's Declaration
contradicts his prior testimony. (ECF No. 94 at 3.) In paragraph
3, Moody says that he "performed AO duties in other
jurisdictions, including…Arkansas." (Id.) In paragraph 2 of the
Moody Declaration, Moody says he had worked as an AO in Memphis.
(Id.) Defendant cites Moody's prior testimony referenced above,

9

where when asked if he had "left out" any part of his work
history, Moody replied "not that I can think of right now. No."
(Id. at 3.) In his prior testimony, Moody mentioned working as
an AO in Arkansas and Memphis, but no other locations. (ECF No.
94-2 at 3-4.) Defendant focuses on the plural of the word
"jurisdictions," arguing that, because Moody appears to refer to
at least one jurisdiction other than Memphis and Arkansas, he
contradicts his prior testimony. (ECF No. 94 at 3.)

The cited sentence sentence fails to directly contradict
his prior testimony because Moody stated in prior deposition
testimony that he could not think of anything he had left out
"right now." It is possible that he later remembered other
jurisdictions. It is also possible that he "performed AO duties
in other jurisdictions" on an ad hoc or temporary basis, despite
being officially employed in other roles. It is also possible
that Moody merely imprecisely and improperly used the plural
form of the word.

Defendant cites no prior testimony that directly
contradicts paragraph 3 of the Moody Declaration where he states
he performed AO duties in two locations. Paragraph 3, like
paragraph 2 above, merely supplements prior testimony. Defendant
also admits that, even if it were contradictory, paragraph 3
would "not create any dispute of material fact that would

preclude summary judgment." (Id. at 8.) Paragraph 3 of the Moody

Declaration does not directly contradict his prior deposition

testimony.

### 3. Paragraph 12

Defendant argues that paragraph 12 of the Moody Declaration

contradicts his prior testimony. (Id. at 3.) In paragraph 12,

Moody says:

> The Chief Financial Officer in my area (Holley O'Brien)
> required that my team review resumes of candidates for the
> Seattle AO position and rank them to ensure critical financial
> positions were filled by local district managers to applicants
> that had experience and could likely perform the job and did not
> fill critical financial positions with friends of friends or,
> for example, other court employees that were nice but didn't
> have proper qualifications or experience

(ECF No. 94 at 3-4.) Defendant cites various sections of Moody's

prior testimony that discuss the process for rating applicants

to the Seattle AO position and that show Moody used the word "I"

to refer to the rankings. (ECF No. 94 at 3-4.) Defendant argues

that this testimony directly contradicts his Declaration because

Moody used the word "I" rather than referring to a "team." (Id.)

This paragraph of Moody's Declaration does not directly

contradict Moody's prior testimony for multiple reasons. There

is no direct contradiction between saying that "I" did something

and saying my "team" did something if the individual "I" is part

11

of that team.   The former statement could be a more specific or exact version of the latter.   People often refer to achievements as their own when in reality they were the result of a team's work.   Defendant cites no prior testimony in which Moody was asked directly about whether he or a team produced the rankings.

Even if there were a contradiction, however, the Moody Declaration says that the Chief Financial Officer "required that" the team review the applicants.   The Declaration does not say that Moody or the team followed the requirement.   Paragraph 12 states the Chief Financial Officer's requirement and nothing more.   Defendant cites no prior testimony that directly contradicts what Moody understood the Chief Financial Officer's requirement to be.   Paragraph 12 does not directly contradict Moody's prior testimony.

### 4. Paragraph 13

Defendant argues that paragraph 13 of Moody's declaration contradicts his prior testimony. (ECF No. 94 at 4.)  That paragraph consists of three sentences.   Defendant argues that they should not be considered for purposes of summary judgment because they contradict prior testimony. (Id. at 4-6.)

In sentence one, Moody says that he "forwarded to the Human Resources Division (HRD) the recommendations of the team,"

12

apparently referring to the Seattle AO position. (Id. at 4.)
Defendant cites a passage in a deposition in which Moody agrees
with the proposition from the questioner that "you forwarded
your ratings to Mr. Green, Right?" (Id.) This is not directly
contradictory for the reasons described above.  Team leaders
often take individual credit for their team's accomplishments,
or refer to the team when they acted alone.  This sentence does
not directly contradict Moody's prior testimony.

Defendant analyzes sentences two and three together,
arguing that both contradict prior testimony. (Id.) They read:

> Because of HRD distinction it was varied as to whether or
> not I already knew what the district wanted, whether or not
> interviewing had already ranked the applicants, and often the
> HRD would run down and ask me to rank because they had forgotten
> and needed to make an official offer. This was our process at
> the time not specific to the Seattle AO position.

(Id.) Defendant cites two parts of Moody's prior testimony that
Defendant argues contradict these sentences.  The first is a
statement, likely referring to the candidate rankings for the
Seattle AO position, that Moody "forgot that [he] even did this
as part of [his] job." (Id.) Stripped from context, this may
appear to contradict Moody's Declaration.  In full context,[1]

---

[1] Courts consider the context of the disputed testimony when parties
allege a sham affidavit. See Francis, 601 F. Supp. 3d at 263
(stating that the court "cannot examine the words in a vacuum but
must examine them in the context of the testimony in this case").

however, Moody's failure to remember appears limited to specific times during which candidates for the Seattle AO position were ranked. (ECF No. 75-7 at 28.) Moody refers to other parts of the selection process generally throughout the deposition Defendant cites.[2] Although Moody's memory in the prior deposition may have been inexact about specific details of the selection process for the Seattle AO position, his memory of the process generally is not. The third sentence of Paragraph 13 states that the second sentence describes the "process at the time and not specific to the Seattle AO position." (ECF No. 94 at 4.) A statement about general process does not directly contradict a failure of memory in prior testimony about a specific process. That is especially so when the deponent appears to speak about process generally at other points in his prior deposition.

Defendant cites another sentence in Moody's prior testimony in which Moody says that "it looks like" the resume review happened before the interview for the Seattle AO position. (ECF No. 94 at 4.) This also does not directly contradict the second and third sentences of paragraph 13 of Moody's Declaration. As stated above, the relevant sentences in the Moody Declaration

---

[2] See, e.g., "Q. Why did you send your ratings to Mr. Green? A. Oh, just so he would know. We kept the chief informed of every single step along the way. Almost any vacancy that would have happened, I would have sent it like that, copied the chief." (ECF No. 75-7 at 28.)

14

speak to the general process of candidate ranking, rather than the specific ranking for the Seattle AO position.

Paragraph 13 does not directly contradict Moody's prior testimony.

### 5. Paragraph 14

Defendant argues that paragraph 14 of Moody's Declaration contradicts his prior testimony. (Id. at 4-5.) That paragraph consists of three sentences. Defendant argues that the first two should not be considered for summary judgment. (Id. at 4-6.)

The first sentence reads, "At that time, I do not think I even knew district leadership saw the ranking the team put together." (Id. at 4.) Defendant claims that this directly contradicts the following exchange in Moody's deposition: "Q. Why did you send your ratings to Mr. Green? A. Oh, just so he would know. We kept the chief informed of every single step along the way. Almost any vacancy that would have happened, I would have sent it like that, copied the chief." (Id.) These two statements are not directly contradictory. In the Declaration, Moody is opining about whether he thought the district leadership saw the ranking. In his Deposition, he says that he intended to send his ratings to leadership so that they would know. The prior deposition also appears to address a general practice, but

the Declaration appears to address a specific candidate.  Moody
says in his deposition that he intended that leadership would
know his rankings, not that he knew whether they in fact saw his
rankings.  Both statements can be simultaneously true. The first
sentence of paragraph 14 does not directly contradict Moody's
prior testimony.

The second sentence reads, "I did not and still do not think
Green used the rankings in his decision process." (Id.) Defendant
argues that two exchanges in Moody's prior testimony directly
contradict this statement. (Id.) The first is an exchange that
reads: "Q. Did you have any conversations with Jacob Green after
you sent him these rankings about the Seattle AO selection? A.
I don't remember at all." (Id.) The second exchange reads: "Q.
You don't know what importance [Green] placed on those ratings,
do you? A. No, I don't." (Id.) Defendant appears to argue that
these two exchanges directly contradict Moody's Declaration
because he appears to lack a foundation for his belief that Green
did not use the rankings in his decision process.  This argument
fails.  Moody's Declaration states an opinion, that he "did not
and still [does] not think Green used the rankings." (Id.) That
is an opinion, not a statement of fact.  Defendant does not cite
any prior testimony in which Moody offers a contradictory
opinion.  Instead, Defendant cites testimony that may undermine

16

the basis for Moody's apparent belief.  These two statements are not directly contradictory.  One can have an opinion about a fact without having a well-founded basis for that opinion.  The second sentence of paragraph 14 of the Moody Declaration does not directly contradict his prior testimony.

### 6. Paragraph 15

In first part of the first sentence in paragraph 15 in Moody's Declaration, Moody says that he does "not have any personal knowledge about Green and any behavioral problems he may have with his former AO Blue." (Id. at 5.) Defendant cites a series of statements that detail some of the issues that arose between Blue and Green as Moody heard them from Blue. (Id.) Although the statements at first appear contradictory, Moody's Declaration makes a narrow point about personal knowledge Moody had about behavioral problems Green had with Blue from the Green's perspective.  This is confirmed by Moody's prior testimony that Defendant cites: "Q. Do you know if Jacob Green had any problems with Steve Blue? A. I don't know." (Id.) Moody's statement in his Declaration appears to repeat a statement from his prior testimony.  The first part of the first sentence in paragraph 15 does not directly contradict Moody's prior testimony.

The rest of the first sentence in paragraph 15 reads, "I do know that Blue did not receive any training for his position in keeping track of budgets or expenditures in his position." (Id. at 6.) Defendant cites statements that show Blue did receive training - from Moody himself.[3] (Id.) In his Declaration, Moody may have been attempting to convey that Blue did not receive any formal training before Moody intervened to give the training he describes in his prior testimony. However, Moody makes no such clarification. Plaintiff has made no argument about this statement supporting her position that the statement is not directly contradictory.[4] (Id., and ECF No. 98 at 3.) This portion of the first sentence of paragraph 15 is directly contradictory and will not be considered for the purposes of ruling on Defendant's motion for summary judgment.

In the last sentence in paragraph 15, Moody says that, "As I recall, Green preferred to do these tasks himself." (Id. at 5.) "These tasks" refers to keeping track of budgets or expenditures. Defendant cites prior testimony that appears to show Green "wanted [Blue] to do" some of this work. (Id.)

---

[3] In his prior testimony, Moody says, "I have also tried to train Steve Blue" and "I began doing Skype sessions with Steve Blue to train him on how to use UFMS, the unified financial management system, to run his budget." (ECF No. 94 at 6.)

[4] Moody's use of the words "any training" also cuts against a non-contradictory interpretation.

Although there is some tension between the Declaration and the
prior testimony, the two are not directly contradictory.
Moody's Declaration speaks to Green's general preference about
a type of work, not his specific practice of delegating the
budget and expenditure tasks at particular times. Defendant
cites no prior testimony in which Moody explicitly describes
Green's general preferences about whom he wanted to do this work.
The final sentence in paragraph 15 of Moody's Declaration does
not directly contradict his prior testimony.

The only directly contradictory statement in Moody's
Declaration is: "I do know that Blue did not receive any training
for his position in keeping track of budgets or expenditures in
his position." (Id. at 6.) That statement will not be considered
when the Court rules on Defendant's motion for summary judgment.
None of the other statements is directly contradictory.

### B. Sham Issues

"If…there is no direct contradiction, then the district
court should not strike or disregard that affidavit unless the
court determines that the affidavit constitutes an attempt to
create a sham fact issue." Aerel, 448 F.3d at 908 (internal
quotations omitted). That occurs when the affidavit is "in
tension with…prior testimony." Cox, 2025 WL 2603787, at *9. "In
that situation, the key question is whether the circumstances

show that the party filed the affidavit merely to manufacture a
sham fact issue." Id. (internal citations omitted).

The Sixth Circuit has held that a "useful starting point
for this inquiry is the nonexhaustive list of factors articulated
by the Tenth Circuit in Franks [v. Nimmo, 796 F.2d 1230, 1237
(10th Cir.1986)]." Aerel, 448 F.3d at 908.  Those factors
include "[1] whether the affiant was cross-examined during his
earlier testimony, [2] whether the affiant had access to the
pertinent evidence at the time of his earlier testimony or
whether the affidavit was based on newly discovered evidence,
and [3] whether the earlier testimony reflects confusion [that]
the affidavit attempts to explain." Id. at 909; see also In re
Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods.
Liab. Litig., No. 2:18-CV-01509, 2020 WL 3048190, at *8 (S.D.
Ohio June 8, 2020) (applying the Franks factors). "A party who
is cross-examined but nevertheless offers unequivocal testimony,
only to be contradicted by a later affidavit, has indeed tried
to create a sham fact issue."  Miller v. Food Concepts Int'l,
LP, No. 2:13-CV-00124, 2017 WL 1163850, at *7 (S.D. Ohio Mar.
29, 2017) (citing O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d
567, 593 (6th Cir. 2009)).

The nonexhaustive factors above slightly favor Defendant.
Moody was subject to cross-examination during his prior testimony

(ECF No. 94-1 at 12), and neither Plaintiff nor Moody contends that Moody had access to new evidence. (ECF No. 98.) Moody's testimony cited by Defendant was not generally "confused." (ECF No. 94 at 3-6.)

However, the <u>Franks</u> factors are "nonexhaustive." <u>Aerel</u>, 448 F.3d at 908. Deponents are "under no obligation to volunteer information not fairly sought by the questioner." <u>Id</u>. at 907. In the absence of direct contradiction, the sham affidavit rule requires "tension" between a contested affidavit and prior testimony. <u>Cox</u>, 2025 WL 2603787, at *9.

Here, the non-contradictory portions of the Moody Declaration are not sufficiently in tension with Moody's prior testimony to warrant striking them from consideration for purposes of summary judgment. The Declaration is not a "sham declaration" filed to manufacture "sham issues." As discussed above, the Declaration adds context to the case or offers Moody's opinions. When an affidavit adds information, "such an affidavit fills a gap left open by the moving party and thus provides the district court with more information, rather than less, at the crucial summary judgment stage." <u>Aerel</u>, 448 F.3d at 907 (holding that an affidavit so described should not be considered a sham affidavit).

The Court today merely holds that it will consider those parts of Moody's Declaration that do not directly contradict his prior testimony.


**IV.  Conclusion**

For the reasons above, the portion of the first sentence of paragraph 15 in Moody's Declaration that reads, "I do know that Blue did not receive any training for his position in keeping track of budgets or expenditures in his position" directly contradicts his prior testimony.  The Cout will not consider that statement when the Court considers Defendant's motion for summary judgment.  The Court will consider all other parts of the Declaration.  The Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion.


So ordered this 29th day of January, 2026.


*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE