```
              IN THE UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF TENNESSEE
                        WESTERN DIVISION
```

|  |  |
|---|---|
| JANICE M. CRAWFORD, | ) |
| Plaintiff, | ) |
| v. | ) No. 23-cv-02456-SHM-atc |
| PAMELA BONDI, ATTORNEY GENERAL, | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Janice M. Crawford sues Defendant Pamela Bondi, Attorney General of the United States of America, alleging a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). Before the Court is Defendant Pamela Bondi's Motion for Summary Judgment. (ECF No. 75.) For the reasons below, the Court **GRANTS** Defendant's Motion.

I.   **Background**[1]

In July 2017, Plaintiff Janice M. Crawford applied for a job as an administrative officer ("AO") with the United States

---

[1] In her response to Defendant's statement of undisputed facts in support of Defendant's Motion for summary judgment, Plaintiff submits no facts of her own. She only disputes some of Defendant's facts. (ECF No. 83-2.) The Court's narrative relies on Defendant's

Marshals Service ("USMS") in Seattle, Washington (the "Seattle Position"). (ECF Nos. 75 at 2 & ECF No. 83 at 2.) Plaintiff interviewed for the Seattle Position with three people: Jacob Green, the Selecting Official and Chief Deputy United States Marshal; Charles Daniels, the Assistant Chief in the Office of Compliance; and Grace McGrath, an Administrative Officer in California. (Id.)

On September 11, 2017, Plaintiff was informed that she had not received the Seattle Position. (ECF No. 83-2 at ¶ 50.) Another applicant, Wilma Thompson, had been selected. (ECF Nos. 75 at 1 & 83 at 2.) In December 2018, Plaintiff filed an Equal Employment Opportunity ("EEO") claim after she was not selected for a different, unrelated Property Management Specialist position with the USMS. (ECF Nos. 83 at 2-3 & 83-2 at ¶ 59.) While reviewing the Report of Investigation about that claim in August 2019, Plaintiff represents that she, for the first time, read an affidavit in which a USMS employee, Steven Moody, said that Jacob Green learned of Plaintiff's prior, unrelated EEO claims and did not hire Plaintiff for the Seattle Position because he "didn't want to deal with that." (the "Moody Affidavit") (ECF No. 83 at 3.)

---

statement of undisputed facts and on documents Plaintiff cites in the record.

On September 6, 2019, Plaintiff filed an EEO claim alleging retaliation by the USMS for protected activity under Title VII of the Civil Rights Act ("Title VII") for failing to select her for the Seattle Position. (ECF Nos. 75 at 11-12 & 83 at 10.) Plaintiff represents that filing that claim "start[ed] the [EEO] process." (Id.) Plaintiff's EEO claim was adjudicated by the U.S. Equal Employment Opportunity Commission (the "EEOC"), which made its Final Agency Decision on March 30, 2023. (ECF No. 1-3.) In that decision, the EEOC rejected Plaintiff's claim and concluded that management had offered legitimate, nondiscriminatory reasons for its hiring decision. (ECF No. 1-2 at 2.)

Plaintiff filed this case on July 31, 2023, in accordance with the EEOC's Final Agency Decision, which granted Plaintiff the right to sue in the appropriate U.S. District Court. (ECF No. 1.) On May 29, 2024, the Court denied Defendant's motion to dismiss (the "May 29 Order"). (ECF No. 17.) In its May 29 Order, the Court equitably tolled the deadline for Plaintiff to initiate contact with an EEO counselor based on the allegations in the Complaint and determined that Plaintiff had adequately alleged retaliation. (Id.)

Since the May 29 Order, the parties have conducted discovery for more than a year. On August 20, 2025, Defendant filed the pending Motion for Summary Judgment. (ECF No. 75.) Defendant

3

argues that the record now shows that Plaintiff is not entitled to equitable tolling, and that, even if she were, no reasonable jury could conclude that Plaintiff was retaliated against for protected activity when she was not hired for the Seattle Position. (ECF No. 75.) Plaintiff responds that she remains entitled to equitable tolling based on the record and that the case should go to trial. (ECF No. 83.)

## II. Jurisdiction

Federal district courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Plaintiff brings a claim under Title VII. (ECF No. 1.) The Court has original federal question jurisdiction over that claim.

## III. Standard of Review

Under Federal Rule of Civil Procedure 56(a), a court must grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must show that the nonmoving party, having had sufficient opportunity for discovery, lacks evidence to support an essential element of its case. See Fed. R. Civ. P. 56(c)(1); Peeples v. City of Detroit, 891 F.3d 622, 630 (6th

4

Cir. 2018).  All inferences must be drawn in the light most favorable to the nonmovant. Bledsoe v. Tenn. Valley Auth. Bd. of Dirs., 42 F.4th 568, 578 (6th Cir. 2022).

"The moving party has the burden of showing the absence of a genuine issue of material fact as to at least one essential element of the non-moving party's case." Kurtz v. Sec'y of Army, No. 3:06-1209, 2009 WL 5066901, at *1 (M.D. Tenn. Dec. 21, 2009), aff'd sub nom. Kurtz v. McHugh, 423 F. App'x 572 (6th Cir. 2011) (citing Celotex v. Catrett, 477 U.S. 317, 322-23 (1986)).  Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth "specific facts showing that there is a genuine issue for trial."  Guptill v. City of Chattanooga, Tennessee, 160 F.4th 768, 776 (6th Cir. 2025) (citing Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e))).

The Court "is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989).

Although summary judgment must be used carefully, it "is 'an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action' rather than a 'disfavored

5

procedural shortcut.'" F.D.I.C. v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (quoting Celotex, 477 U.S. at 327).

**IV. Analysis: Equitable Tolling**

   **A. Standard**

Defendant argues that this case is time-barred because Plaintiff did not diligently pursue her rights by timely initiating contact with the EEOC. Plaintiff waited two years after she learned she had not been hired for the Seattle Position to initiate the EEO process by filing her EEO claim alleging retaliation. (ECF No. 75 at 3-12.) Plaintiff does not dispute Defendant's timeline, but argues that she is entitled to equitable tolling to allow her claim to proceed. (ECF No. 83 at 10-11.)

"A plaintiff who alleges that a federal agency has engaged in race discrimination must initiate contact with an EEO counselor within forty-five days of the date of the alleged discriminatory act." Dixon v. Gonzales, 481 F.3d 324, 330 (6th Cir. 2007). This forty-five-day limitation is a prerequisite to filing suit, but "it is subject to equitable tolling, waiver, and estoppel." Id.

As the Court noted in its May 29 Order denying Defendant's motion to dismiss, the forty-five-day clock began to run when Plaintiff learned of the USMS's decision not to hire her, not

6

when Plaintiff learned the decision might have been discriminatorily motivated. (ECF No. 17 at 9.) Plaintiff learned of the hiring decision on September 11, 2017, and did not initiate contact until September 6, 2019, when she filed her EEO claim to start the EEO process. (ECF Nos. 1 at 5 & 83-2 at ¶ 50.) The Court must equitably toll Plaintiff's deadline if the case is to proceed.

"Equitable tolling is an issue of law suitable for disposition on summary judgment." Kurtz, 2009 WL 5066901, at *6 (citing Chavez v. Carranza, 559 F.3d 486, 494 (6th Cir.2009)). At the summary judgment stage, the decision to equitably toll the limitation period for filing a charge of discrimination is "within the discretion of the district court and should be made on a case-by-base basis." Black v. Columbus Pub. Schs., 211 F. Supp. 2d 975, 981 (S.D. Ohio 2002), aff'd, 79 F. App'x 735 (6th Cir. 2003).

Title VII and subsequent amendments are the exclusive judicial remedy for claims of discrimination in federal employment. Steiner v. Henderson, 354 F.3d 432, 434 (6th Cir. 2003). In allowing federal employees to sue under Title VII, "Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of rigorous administrative exhaustion requirements and time limitations." Steiner, 354 F.3d at 434-35 (citing McFarland v. Henderson, 307

7

F.3d 402, 406 (6th Cir.2002)). The Supreme Court has made clear that tolling in a Title VII case should be allowed "only sparingly." Steiner, 354 F.3d at 435 (citing Irwin v. Dep't of Veterans Affs., 498 U.S. 89, 96 (1990)). The "procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984).

Courts consider the following five nonexhaustive factors when determining whether equitable tolling is appropriate in a Title VII case: (1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement. Dixon, 481 F.3d at 331.

**B. Application**

**1. Factors One, Two, and Five**

Factors one, two, and five favor Defendant. Plaintiff has nowhere argued that she lacked notice, knowledge, or constructive knowledge of the filing or legal requirements for Title VII claims in general or for this claim in particular. (ECF Nos. 1 & 83.) She timely initiated EOO counseling as a federal employee in at least three other cases alleging Title VII violations

8

before this one. See Crawford v. Skinner, 35 F.3d 565, 1994 WL 443453 (6th Cir. Aug. 15, 1994) Crawford v. Winter, No. 08-2105 (W.D. Tenn.), (ECF No. 12-8); and Crawford v. Carter, No. 13-2439 (W.D. Tenn.) (ECF No. 12-9). Prior experience with the EEO process is sufficient to infer a plaintiff's knowledge of the relevant procedural requirements. Kurtz, 2009 WL 5066901, at *6 ("plaintiff therefore had experience with the EEO process and direct contact with an EEO Officer before any of the alleged incidents of retaliation took place. Because of this, it is unreasonable that Plaintiff remained ignorant of the procedural requirements of the EEO Office…and therefore the magistrate did not err in refusing to apply equitable tolling of the filing requirement"). Based on Plaintiff's experience in prior cases, the Court attributes relevant knowledge of the EEO process to Plaintiff.

    **2. Factor Three**

The parties' arguments center on factors three and four. Factor three addresses whether Plaintiff was diligent in pursuing her rights. Plaintiff argues that she was diligent because she "had no reason to believe that she [w]as [sic] the victim of discrimination or reprisal at the time of her nonselection in 2017." (ECF No. 83 at 10.) Plaintiff filed an EEO claim to begin the EEO process about the Seattle Position a few days after she read the Moody Affidavit. Therefore, Plaintiff argues that she

9

diligently pursued her rights. (Id. at 10-11.) The Court agreed with Plaintiff when it denied Defendant's motion to dismiss and equitably tolled the filing deadline. (ECF No. 17.)

Defendant argues that the record, as it has developed since the dismissal stage, should change the Court's prior conclusion. (ECF No. 75 at 6-7.) First, Defendant shows that Plaintiff was generally suspicious about potential retaliation as of April 25, 2017, when Plaintiff told the union president that Plaintiff "may be getting retaliated against" based on a desk audit. (ECF No. 83-2 ¶ 49.) That occurred three months before Plaintiff interviewed for the Seattle Position (ECF No. 1 at 4.) Second, Defendant shows that, when Plaintiff "did her interview, she thought she did well, and she was being told that she did well, but was not selected," as Plaintiff stated to the EEO investigator later on. (ECF No. 83-2 at ¶ 50.) Defendant also shows that two or three weeks after Plaintiff's interview, another employee told Plaintiff that he gave her a "good recommendation" for the Seattle Position.[2] (ECF No. 83-2 at ¶ 51.) Defendant shows that a different employee said he was

---

[2] Plaintiff appears to dispute whether that employee, Brian Sanders, actually gave Plaintiff a positive recommendation. (ECF No. 83-2 at 21.) Any such objection is not relevant here, because whether Sanders gave a positive recommendation and whether Green considered it does not change what Sanders told Plaintiff. The Court does not consider Sanders' statement for the truth of the matter asserted, but for its effect on the listener, Plaintiff.

10

"shocked" when Plaintiff was not selected. (ECF No. 75-34 at 1.)[3] None of that evidence was in the record or otherwise before the Court for consideration at the dismissal stage.

Defendant argues that many things have emerged in the record that should have alerted Plaintiff to the possibility that she was being retaliated against before she learned of the Moody Affidavit. Defendant argues that these new facts show that Plaintiff did not diligently pursue her rights.

The Court said in its May 29 Order denying Defendant's motion to dismiss that there were two questions to consider in deciding Plaintiff's diligence: whether Plaintiff diligently sought the information necessary to learn whether she should consider an EEO action and whether Plaintiff diligently initiated contact with an EEO employee after being put on notice that she had a potential claim. (ECF No. 17 at 13) (citing Amini v. Oberlin Coll., 259 F.3d 493, 499 (6th Cir. 2001)).

Here, Plaintiff did not seek information about the Seattle AO employment decision until after she had read the Moody Affidavit, nearly two years after she learned she had not been

---

[3] Defendant also cites other evidence in the record surrounding a different EEO complaint Plaintiff was considering filing about a different position. (ECF No. 75 at 8-9.) Although that evidence might show a generally litigious disposition on the part of Plaintiff, it does not necessarily show that she could or should have suspected retaliation when she was not selected for the Seattle Position.

11

hired for the Seattle Position. (ECF No. 83 at 10.) In its May 29 Order, the Court, considering a motion to dismiss, reasoned that "it is difficult to determine how Plaintiff could have surmised that her non-selection was retaliatory." (ECF No. 17 at 15.) The evidence that has emerged in the record now shows that Plaintiff was or should have been on notice that there was the possibility she was subject to retaliation.  Plaintiff testified that "she thought she did well, and she was being told that she did well, but was not selected." (ECF No. 83-2 at ¶ 50.) Two or three weeks after her interview—and well within the 45-day period to initiate contact with an EEO counselor—another employee told Plaintiff that he had given her a good recommendation for the Seattle Position. (ECF No. 83-2 at ¶ 51.) Other employees were "shocked" that Plaintiff had not been selected. (ECF No. 75-34 at 1.) These facts combine to show that Plaintiff *could* have surmised that her non-selection was retaliatory and that she was not diligent in pursuing her rights.  Although Plaintiff later discovered additional evidence of potential discrimination, that information was not critical to initiating the EEO process in the initial 45-day period.  "A plaintiff need not know all the facts of [her] case in order to comply with Title VII's administrative exhaustion requirement." Tenenbaum v. Caldera, 45 F. App'x 416, 421 (6th Cir. 2002).

12

Other courts have equitably tolled the deadline for a Title VII claim when the plaintiff has lacked information critical to her case. See Dixon, 481 F.3d at 330 and Seay v. Tenn. Valley Auth., 339 F.3d 454, 469 (6th Cir.2003). In those cases, however, "the defendant withheld information or provided misleading information that plaintiff needed to raise a suspicion that the defendant's actions were motivated by discrimination or retaliation." Taylor v. Donahoe, 452 F. App'x 614, 618 (6th Cir. 2011) (describing Dixon and Seay). There, "the period was tolled, but only until [plaintiff] was aware of the possibility that he had suffered an adverse employment action because of illegal discrimination." Taylor, 452 F. App'x at 618. Dixon and Seay are inapplicable here, where there is no allegation of employer wrongdoing in withholding information or providing misleading information.

"To successfully raise a claim of equitable tolling, a party must show either fraudulent concealment of the critical facts that would lead one to know that [she] can sue, or a misrepresentation of those facts—whether made in good faith or not—that was calculated to induce a plaintiff to forego the right to sue." Tenenbaum, 45 F. App'x at 421 (cleaned up). Plaintiff does not argue that she was prevented or hindered from inquiring or accessing evidence about her case. Although it was possible that concealment or misrepresentation would emerge in the record

13

during discovery after the dismissal stage, the record does not contain any such evidence.

Because Plaintiff was aware of the possibility that she had suffered an adverse employment action motivated by illegal discrimination when she learned she had not been hired for the Seattle Position, and because there is no evidence or allegation of employer concealment or misrepresentation that prevented Plaintiff from pursuing her rights, Dixon and Seay are distinguishable. Plaintiff did not diligently pursue her rights. As the Sixth Circuit held in Amini, courts "will not, absent other circumstances weighing in favor of equitable tolling, suspend the running of the statute of limitations in a discrimination action until the plaintiff learns sufficient facts that would lead [her] to suspect that the defendant acted with discriminatory intent." 259 F.3d at 502. There are no such circumstances here. Factor three favors Defendant.

### 3. Factor Four

Factor four addresses prejudice to the defendant. "The Supreme Court has held that the absence of prejudice to the defendant employer 'is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures.'" Steiner, 354 F.3d at 437 (citing Baldwin Cnty. Welcome Ctr., 466 U.S. at 152. "Although absence of prejudice is a factor to be considered in determining whether the doctrine

14

of equitable tolling should apply once a factor that might justify tolling is identified, it is not an independent basis for invoking the doctrine." Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 562 (6th Cir. 2000) (citing Andrews v. Orr, 851 F.2d 146, 151 (6th Cir.1988)).  "Prejudice may only be considered if other factors of the test are met [by the plaintiff] and therefore can only weigh in [the defendant's] favor."  3799 Mill Run Partners, LLC v. City of Hilliard, Ohio, 839 F. App'x 948, 951 (6th Cir. 2020) (citing Townsend v. Soc. Sec. Admin., 486 F.3d 127, 132 (6th Cir. 2007)).

"Prejudice for purposes of the doctrine of equitable tolling means the disposal of evidence and the inaccessibility of witnesses, the dimming of recollections and other disadvantages incident to the lapse of time." Monnheimer v. Nielsen, No. 1:08CV356, 2008 WL 5333808, at *5 (S.D. Ohio Dec. 19, 2008) (citing Salins v. City of Dayton, 624 F.Supp. 632, 634 (S.D.Ohio 1985)).

The Court need not consider prejudice to Defendant because no other factor favors Plaintiff.  Courts have denied requests for equitable tolling even when no prejudice to the defendant had been shown. See, e.g. Steiner, 354 F.3d at 437; Graham-Humphreys, 209 F.3d at 562; Garrett v. Structured Cabling Sys., Inc., No. CIV. 10-55-DLB, 2010 WL 3862994, at *12 (E.D. Ky. Sept. 28, 2010); and Amini, 259 F.3d at 502

15

Nevertheless, factor four favors Defendant. At the dismissal stage, Defendant did not show and made no argument attempting to show that she would be prejudiced by the Court's equitably tolling Plaintiff's deadline to initiate the EEO process. (ECF No. 17 at 15.) Defendant argues now that she was prejudiced by Plaintiff's delay in two ways. First, Defendant argues that her access to witnesses was hindered, because three employee witnesses had left the USMS by January 2020, four months after Plaintiff first sought EEO counseling in September 2019. (ECF Nos. 75 at 11 & 83-2 at ¶ 60.) Plaintiff does not address this argument.[4] The two-year delay in initiating the EEO process meant that Defendant had more difficulty accessing witnesses.

Second, Defendant cites witnesses' memory loss caused by the two-year delay. (ECF No. 75 at 11-12.) Defendant accurately cites the deposition testimony of Jacob Green, Eddie Laster, and Steve Moody that shows a failure of memory about certain events and details. (ECF No. 75 at 11-12.) Green ascribed his difficulty recalling events to the passage of time. (ECF No. 75-2 at 29). Moody testified that the fact he was deposed after his June 2022 retirement affected his ability to recall key events.[5] (ECF No.

---

[4] Plaintiff incorrectly asserts that "the only prejudice the Defendant can point to deals with witness recollection." (ECF No. 83 at 11.)

[5] Moody's subsequent declaration, submitted by Plaintiff in her response to Defendant's Motion for Summary Judgment, clarifies some,

16

75-7 at 5.) Laster, at his deposition, also implied that the passage of time had hindered his ability to recall events. (ECF No. 75-18 at 33-34.)

Memory naturally fades with time, and it is impossible to say definitively whether a witness's memory would be better absent Plaintiff's two-year delay. A witness's faded memory might also be due in part to the fact that the case had to proceed through an administrative process before reaching this Court. (ECF No. 1-2.) Plaintiff argues that these lapses in memory occurred in response to questions that strategically favor Defendant. (ECF No. 83 at 11-13). However, the Court must consider the fact that three key witnesses attributed their lack of memory to the passage of time, potentially prejudicing Defendant and hindering the case, given Plaintiff's two-year delay in initiating the EEO process.

The heightened difficulty of accessing witnesses and the fading memory of other witnesses prejudice Defendant.

### 4. There Are No Extenuating Circumstances

All of the factors weigh against equitable tolling in this case. Plaintiff knew the procedures for initiating the EEO process, she suspected or should have suspected she was potentially being retaliated against when she was not selected

---

but not all, of the gaps Defendant cites in Moody's memory during his deposition. (ECF No. 83-1.)

for the Seattle Position, and Defendant would be prejudiced by Plaintiff's two-year delay in initiating the process. Even in the absence of prejudice to Defendant, equitable tolling would be inappropriate.

Because the Dixon factors are "not exhaustive, and equitable tolling is decided on a case-by-case basis, this inquiry must consider any additional, relevant factors." Garrett, 2010 WL 3862994 at *12. The parties have cited no additional factors, and the Court finds none relevant here.

## V. Conclusion

Defendant's Motion for Summary Judgment is **GRANTED**. After full consideration of the record, the Court finds that all of the Dixon factors weigh against equitably tolling Plaintiff's filing deadline. Because Plaintiff did not initiate the EEO process within forty-five days after learning she had not been hired for the Seattle Position, the retaliation and reprisal claim is time-barred and dismissed **WITH PREJUDICE**.

So ordered this 11th day of February, 2026.

                                       */s/ Samuel H. Mays, Jr.*
                                       SAMUEL H. MAYS, JR.
                                       UNITED STATES DISTRICT JUDGE